UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mary G.,                                    Case No. 0:17-cv-03436-KMM

    Plaintiff,

v.                                          ORDER

Nancy Berryhill,

    Defendant.

---

The plaintiff, Mary G (hereafter "Ms. G"), brings this action challenging the denial of her application for Social Security disability benefits by the Commissioner of the Social Security Administration ("SSA"). This matter is before the Court on the parties' cross-motions for summary judgment. Pl.'s Mot., ECF No. 13; Def.'s Mot., ECF No. 17. For the reasons that follow, the Ms. G's motion is denied, the Commissioner's motion is granted, and this matter is dismissed.

I.  Background

Over the years, Ms. G has struggled with chronic diffuse pain from fibromyalgia; pain in her arms, neck, and hands; trigger thumb; and breast cancer, which is now in remission. She was diagnosed with breast cancer in August 2014. She received chemotherapy for several months and had a right breast lumpectomy in February 2015. She then underwent radiation treatment from April 2015 through May 2015. After her cancer treatment concluded, she continued to struggle with complaints of pain and ongoing issues with her hands. Ms. G has also occasionally experienced anxiety and depression. Though she has a history of excessive alcohol use, she stopped drinking heavily when she was diagnosed with cancer.

Ms. G applied for disability benefits from the SSA and alleged that she became unable to work beginning on June 30, 2014. The SSA denied her application initially and on reconsideration, and Ms. G requested a hearing

before an Administrative Law Judge ("ALJ"). At an April 7, 2016 hearing, the ALJ assigned to her case, Roger Thomas, heard testimony from Ms. G and a vocational expert, Robert Bryzinski. Following the hearing, ALJ Thomas issued a written decision denying Ms. G's claim.

The ALJ found that Ms. G has several severe impairments, including: "fibromyalgia; cervical degenerative disc disease; carpal tunnel syndrome; hypothyroidism; history of right breast cancer status post chemotherapy, radiation, and lumpectomy currently in remission; and history of right trigger thumb release." Admin. R. ("R") at 12, ECF No. 16. The ALJ found that Ms. G's anxiety and depression would not cause more than a minimal limitation in her ability to perform basic mental work activities, noting that they would only result in mild limitations in social functioning and maintaining concentration, persistence, and pace. R. 12–14.

ALJ Thomas also determined Ms. G's residual functional capacity ("RFC"), R. 14–19, which is the most a claimant can do despite his or her physical and mental limitations, 20 C.F.R. § 404.1545(a)(1). The ALJ found that Ms. G can still perform "light work,"[1] but is precluded from climbing ladders, ropes, and scaffolds. She can only occasionally bend, stoop, kneel, crouch, crawl, and engage in overhead tasks, and she can frequently climb ramps and stairs. She must avoid exposure to extreme temperatures, cannot work in an environment that is very wet, subject to vibrations, or presents hazards such as unprotected heights or dangerous unprotected machines. Based on these restrictions,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

ALJ Thomas found that Ms. G could return to her past relevant work as a cost accountant, and therefore, he determined that she is not disabled within the meaning of the Social Security Act. R. 19–20.

Ms. G asked the Social Security Appeals Council to review the ALJ's decision, but the Appeals Council denied her request. Therefore, the ALJ's decision became the final decision of the Commissioner, subject to judicial review. She brings this action to appeal the Commissioner's determination that she is not disabled.

II.  Legal Standard

In reviewing the Commissioner's denial of Ms. G's application for benefits the Court determines whether the decision is supported by "substantial evidence on the record as a whole" or results from an error of law. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). The Court considers not only the evidence supporting the Commissioner's decision, but also the evidence in the record that "fairly detracts from that decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the Court will not reverse the Commissioner's decision merely because substantial evidence might also support a different conclusion. *Gann*, 864 F.3d at 950; *Reed*, 399 F.3d at 920. The Court should reverse the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's decision is not among the reasonable conclusions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

III.  Discussion

Ms. G raises four main challenges to the Commissioner's decision. First, she argues that ALJ Thomas should have included limitations in the RFC that would account for her neck, arm, and hand impairments, including cervical disc disease, carpal tunnel syndrome, and right trigger thumb. Second, she argues

that the ALJ erred in categorizing her past relevant work. Third, she contends that the ALJ should have included limitations in the RFC that correspond to her mild limitations in social functioning and maintaining concentration, persistence, and pace. And fourth, she argues that even though ALJ Thomas acknowledged Ms. G's impairments were more severe while she was receiving treatment for breast cancer, he failed to consider whether she was disabled for a closed period of benefits. For the reasons that follow, the Court concludes that the ALJ's decision must be affirmed.

### A. Neck, Arm, and Hand Limitations

As noted above, Ms. G asserts that ALJ Thomas erred when he failed to adopt specific limitations in the RFC that reflect a lack of ability to use her hands. She claims that because the ALJ found her cervical disc disease, carpal tunnel syndrome, and right trigger thumb were severe impairments, he was required to include limitations restricting the use of her hands and arms at work. For several reasons, the Court disagrees and finds that Ms. G has failed to show the ALJ's RFC determination was not supported by substantial evidence.

First, persuasively reasoned cases have rejected the legal proposition that underlies Ms. G's argument. Several courts have held that an ALJ is not required to include restrictions in an RFC merely because he or she has determined, at step two of the sequential evaluation, that a claimant has a severe impairment. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Gann v. Colvin*, 92 F. Supp. 3d 857, 884–85 (N.D. Iowa 2015) ("[A] finding of a severe impairment at Step Two does not automatically require that the ALJ include corresponding functional limitations at Step Four."); *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012) (rejecting the argument that a finding of a severe impairment requires inclusion of specific limitations in the RFC because of the different analyses that are applied at steps two and four of the sequential evaluation); *Yang v. Comm'r of Soc. Sec.*, No. 00-10466-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."). When determining if an impairment is severe at step two, the ALJ engages in a "de minimis screening" to weed out claims that are "groundless," but when determining an individual's RFC, the ALJ looks at all the evidence in the record

to "determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Taylor*, 2012 WL 294532, at *8. "It is possible ... for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* These inquiries are different and the Court rejects Ms. G's argument that the ALJ was obligated to include restrictions in the RFC to specifically correspond to each severe impairment identified at step two.

Second, although Ms. G suggests that her cervical disc disease limits her ability to use her hands or arms, she points to no evidence connecting her spinal condition to any hand limitations. A finding of disability requires evidence showing that a medically determinable impairment could reasonably be expected to produce a person's symptoms. *Soc. Sec. Ruling 16-3p; Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016) ("We will not find an individual disabled based on alleged symptoms alone. If there is no medically determinable impairment, or if there is a medically determinable impairment, but the impairment(s) could not reasonably be expected to produce the individual's symptoms, we will not find those symptoms affect the ability to perform work-related activities for an adult or ability to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim."). Ms. G does not point to any evidence in the record that suggests a hand limitation ought to have been included in the RFC based on her cervical disc disease, nor does she explain why the restriction on overhead reaching was insufficient to accommodate limitations connected to the spinal condition.

Third, ALJ Thomas acknowledged Ms. G's carpal tunnel syndrome and right trigger thumb conditions, but he reviewed the medical records and other evidence and determined that the significant level of impairment she alleged was not supported. R. 18–19. The Court finds that substantial evidence supports the ALJ's evaluation of Ms. G's carpal tunnel syndrome and trigger thumb, and the RFC was not required to include additional hand and arm limitations based on these impairments.

Ms. G points to treatment records demonstrating that she experienced symptoms of pain in her hands. *See* R. 803, 808, 799, 817, 1070–75. She also

highlights that she had a right trigger-thumb release surgery in September of 2015, after Dr. David Falconer, an orthopedic surgeon, recommended the surgery and observed that she was "functionally quite disabled" at that time. R. 1070–71. However, these records do not demonstrate that ALJ Thomas erred when he determined Ms. G's RFC. Indeed, the September 2015 surgery was largely successful, and Ms. G recovered well. One week after the surgery, Ms. G reported that she was "doing well with minimal pain," had stopped taking pain medication, and had noticed no locking or triggering after her surgery. R. 1068. These facts support the ALJ's conclusion that greater limitations regarding Ms. G's use of her hands were not required. Moreover, the fact that Ms. G can point to certain medical records providing support for her position does not require reversal. If substantial evidence in the record supports the ALJ's decision, reversal is not appropriate simply because some evidence in the record might support the opposite conclusion. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently.").

      Other medical records also support the absence of hand-related restrictions in the RFC determination. The ALJ cited a treatment record from October 13, 2015 in which Ms. G complained of numbness in her hands to her neurologist, Dr. Soren Ryberg, who referred her to hand therapy. R. 18, 817, 1080. Dr. Ryberg observed that although Ms. G has bilateral carpal tunnel syndrome, that impairment was "probably caused by tendon and soft tissue swelling in the hands from … recently diagnosed hypothyroidism." R. 1080. Dr. Ryberg anticipated improvement in Ms. G's symptoms because she had been placed on thyroid replacement. R. 1080. He also noted that Ms. G's recent right trigger-thumb surgery "helped a lot with thumb pain." R. 817, 1080. Two weeks later, during an October 30, 2015 office visit with Dr. Lincoln Likness, Ms. G exhibited normal strength in her wrist and fingers and had intact sensation. R. 786. Though an EMG confirmed Ms. G's carpal tunnel diagnosis, Dr. Likness noted that the impairment was "doing okay." R. 787. Based on this evidence, the ALJ appropriately observed that Ms. G's "carpal tunnel [in late October 2015] was noted to be doing okay." R. 18.

      In formulating the RFC, the ALJ also gave great weight to the February 24, 2015 opinion of Dr. James Stevenson, a non-examining consultant who

6

reviewed Ms. G's records and did not recommend any limitations in the RFC relating to her ability to use her hands. R. 19 (ALJ decision assigning weight to opinion evidence); *id.* at 93 (consultant evaluation finding no limitations for gross manipulation or fine manipulation with the hands). Ms. G criticizes the ALJ's reliance on Dr. Stevenson's opinion because developments occurred in her case after Dr. Stevenson evaluated her records. *See* Pl.'s Mem. at 13. However, as noted above, evidence in the record supported ALJ Thomas's decision not to adopt additional limitations in the RFC relating to Ms. G's carpal-tunnel and trigger-thumb impairments beyond just Dr. Stevenson's opinion. Because Dr. Stevenson's assessment of the medical records is consistent with other evidence in the record, the ALJ did not err in relying on it.[2] *See, e.g., Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111–12 (N.D. Iowa 2012) (concluding that the ALJ did not err in assigning significant weight to non-examining state agency consultants' opinions even though they did not review all of the medical records because the ALJ reviewed all of the medical evidence and found the record as a whole was consistent with those opinions).

### B. Past Relevant Work

Ms. G next argues that the ALJ erred in categorizing her past relevant work, asserting that he should have found she worked as a "price analyst" rather than as a "cost accountant." Pl.'s Mem. at 7. The price analyst job has greater handling demands, which Ms. G argues coincide with her testimony that she spent most of her day working on a computer or with papers. *Id.* Ms. G argues that the case should be remanded so the ALJ can resolve the discrepancy between the description of the cost accountant job and Ms. G's own description of her work. *Id.*

At the hearing, the vocational expert noted that Ms. G had described her last job as a "price analyst" in filings with the SSA. R. 50. The vocational expert asked Ms. G if it was correct that her "job was primarily involved with analyzing financial data to determine what the ultimate cost would be of a product." *Id.* Ms. G said that was a fair description of the work she performed. *Id.* Based on

---

[2]   Ms. G does not argue that any treating physician offered an opinion regarding her hand impairments' effects on her ability to do work-related functions.

that testimony, the vocational expert explained that the better fit for her past relevant work would be a "cost accountant." *Id.* ALJ Thomas relied on the vocational expert's testimony in concluding that Ms. G's past relevant work was as a cost accountant. *See* R. 19.

The Court finds no error in the ALJ's conclusion. The ALJ plainly relied on the vocational expert's opinion regarding the appropriate classification for Ms. G's past relevant work. Ms. G did not challenge the vocational expert's qualifications at the hearing and does not raise any such concern here. Nothing in the record indicates that the Court should second guess the ALJ's reliance on the vocational expert's informed opinion. *See Spencer v. Comm'r of Soc. Sec.*, No. 1:13-cv-454, 2014 WL 4351418, at *4 (S.D. Ohio Sept. 2, 2014) ("A vocational expert is uniquely qualified to determine how jobs are categorized or classified in the [Dictionary of Occupational Titles]."). Indeed, although Ms. G points to an earlier description of her job during the administrative process, the vocational expert's testimony at the hearing was based on Ms. G's own description of the primary requirements of her previous work. Accordingly, the Court finds that the ALJ's past-relevant-work finding was supported by substantial evidence.

### C. Additional Mental-Health Limitations

Ms. G argues that because the ALJ found mild limitations in paragraph "B" criteria for social functioning and maintaining concentration, persistence, and pace, he was required to include limitations in the RFC to account for those mental-health issues. Pl.'s Mem. at 8-10. The ALJ's RFC finding did not, for example, limit Ms. G to jobs that require only brief, superficial contact with coworkers, supervisors, or the public, or that involve only simple, routine, three- or four-step tasks. Instead, ALJ Thomas found that Ms. G did not demonstrate that she has a severe mental impairment. R. 12-14. The ALJ's RFC finding did not include specific limitations to address any mental impairments. *See* R. 14-15. For two reasons, the Court finds that the ALJ's determination is adequately supported.

First, substantial evidence supports the ALJ's assessment of Ms. G's anxiety and depression issues. There was ample support for the ALJ's conclusions that neither anxiety nor depression were severe impairments and for the absence of specific mental-health related restrictions in the RFC. Ms. G

8

did not receive any significant treatment for either anxiety or depression during the relevant period. In an August 25, 2014 consultative exam, the psychologist found no mental-health diagnosis was warranted and the results of the testing were unremarkable. R. 363–66. Ms. G demonstrated the ability to concentrate and maintain attention throughout the exam and denied panic attacks, anxiety, depression, mania, or post-traumatic stress. *Id.* The psychologist noted that her mental-health prognosis was positive. R. 366. Opinions from state agency consultants at the initial and reconsideration levels further support the ALJ's conclusion that her mental-health issues were not severe impairments. *See* R. 75–77, 89–91. Though Ms. G argues that "[t]he evidence of record suggests that [she] had even greater limitations than those adopted by the ALJ," Pl.'s Mem. at 10, she fails to cite any evidence in the record that undermines the ALJ's findings that her non-severe mental-health impairments caused no more than a minimal impact on Ms. G's ability to perform basic work tasks.

Second, the cases cited by Ms. G—*Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996), and *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)— are distinguishable. In *Newton*, the court found an ALJ erred by failing to include restrictions in a hypothetical to the vocational expert corresponding to substantial evidence that Mr. Newton had moderate limitations in maintaining concentration, persistence, and pace ("CPP"). 92 F.3d at 694–95. However, *Newton* does not hold that an ALJ must include mental-health related restrictions in either the RFC or a hypothetical to a vocational expert where the evidence supports a paragraph B finding of only mild limitations in maintaining CPP and the record lacks regular mental-health treatment or other substantiating medical evidence. Other cases have distinguished Newton on this very basis. *See, e.g., Daniels v. Colvin*, No. CIV. 12-407 PAM/AJB, 2013 WL 1329028, at *4 (D. Minn. Apr. 1, 2013) ("Here, unlike in *Newton*, the omitted limitations were not pervasive or frequent. Instead, the record indicates that Daniels's complaints with respect to concentration, persistence, and pace were sporadic at best and minimal (if not non-existent) during his periods of sobriety."); *Allen v. Astrue*, No. 09-CV-4038, 2010 WL 2836813, at *12 n.18 (C.D. Ill. July 16, 2010) ("Unlike the *Newton* claimant, Plaintiff has no significant limitation in her ability to perform activities within a schedule, to maintain regular attendance, and to be punctual within customary tolerances—this is a

significant difference when it comes to 'basic work habits needed to maintain employment.'" (quoting *Newton*, 92 F.3d at 695)).

The Eleventh Circuit's decision from *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011), is similarly unhelpful to Ms. G's position. Although *Winschel* rejected the government's argument that findings in the paragraph B analysis at steps two and three of the sequential evaluation are irrelevant to an RFC determination, 631 F.3d at 1180–81, nothing in the decision supports Ms. G's position that failure to include restrictions in the RFC for any finding of limitations in maintaining CPP is an error.

Based on the Court's review of the record, the evidence does not support Ms. G's claim that the mild limitations the ALJ found in her ability to maintain CPP resulted in any limitations on her ability to complete basic work activities.

### D. Closed Period of Disability

Ms. G argues that ALJ Thomas erred by failing to consider whether she was entitled to benefits for a "closed period" of disability. She contends that the ALJ acknowledged her functioning was worse when she was being treated for breast cancer. However, she asserts that even if her condition improved after her cancer treatment ended, as the ALJ found, he should have addressed whether her diminished abilities during that period prevented her from working. *See* Pl.'s Mem. at 10–14.

As the Eighth Circuit has explained, "disability is not an all-or-nothing proposition; a claimant who is not entitled to continuing benefits may well be eligible to receive benefits for a specific period of time." *Harris v. Sec'y of Dep't of Health and Human Servs.*, 959 F.3d 723, 724 (8th Cir. 1992) (internal quotation marks omitted). If evidence presented to the SSA shows that a claimant was unable to work for at least twelve months, but recovered the ability to work before the decision on her claim is made, she may be eligible for disability benefits for the time she was unable to work. *See* Program Policy Statement, Titles II and XVI: Basic Disability Evaluation Guides, SSR 82-53,

1982 WL 31374, at *6 (Jan. 1, 1982).[3] A claimant seeking an award of benefits for a closed period must nevertheless meet the twelve-month durational requirement applicable to disability claims. *See Van Winters v. Colvin*, No. 1:12-cv-71-SPM, 2013 WL 4402971, at *8 (E.D. Mo. Aug. 14, 2013) ("[T]o qualify for a closed period of disability, the disabling condition must last for at least twelve months.") (citing 42 U.S.C. § 423(d)(A), *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006), and *Holt v. Colvin*, No. 4:11-cv-754-DPM-BD, 2013 WL 1222392, at *1 (E.D. Ark. Mar. 25, 2013)).

Ms. G suggests that the ALJ erred by not awarding her a closed period of disability benefits based on her symptoms during her cancer treatment and its "after effects." Pl.'s Mem. at 13. ALJ Thomas did not specifically address whether Ms. G qualified for a closed period of disability as a result of her treatment for breast cancer or during the months that followed. He found that Ms. G was not under a disability between her alleged onset date and the date of his decision. With respect to Ms. G's cancer treatment, the ALJ's opinion implicitly rejects any closed period of disability benefits because he found Ms. G had "significant problems with fatigue and pain, particularly during the time when she was receiving chemotherapy and radiation from approximately October 2014 when her symptoms worsened through July 2015, when her symptoms appeared to be less severe." R. 16. This 9- or 10-month period would not meet the durational requirement for a closed period of disability.

Nevertheless, Ms. G contends that the ALJ erred by concluding that her symptoms improved in July 2015, citing records where she reported worsening pain symptoms in August of 2015, R. 804, and that her issues with back pain persisted in October 2015 despite conservative care, R. 797. However, an August 4, 2015 treatment note shows a largely unremarkable examination. R. 802. In addition, at the October 2015 visit that Ms. G references, a physical examination showed she had normal strength, no swelling, no deformity, normal gait, and intact heel-to-toe walking. R. 796. The testing of her motor skills rated her 5/5, indicating no issues with her elbows, wrists, or fingers, and she retained sensation to light touch. *Id.* Ms. G exhibited nothing abnormal neurologically or

---

[3] SSR 82-53 was superseded in part by SSR 91-7c, 1991 WL 231791. The later Social Security Ruling relates to childhood disability determinations, but does not affect the availability of benefits for a "closed period" of disability.

11

psychologically. R. 797. The ALJ acknowledged that records from the period of July through October 2015 supported Ms. G's claims that she was experiencing pain, but he found that the objective medical evidence did not support a finding of disability. R. 18–19. There is substantial evidence to support the ALJ's assessment.

IV.     Order

Because substantial evidence supports the Commissioner's denial of benefits, Ms. G's motion for summary judgment is **DENIED** and the Commissioner's motion for summary judgment is **GRANTED**. This matter is **DISMISSED WITH PREJUDICE.**

**Let Judgment be entered accordingly.**

Date: March 12, 2019                    *s/Katherine Menendez*
                                        Katherine Menendez
                                        United States Magistrate Judge